**COTTONE & MOON**
EDWIN R. COTTONE, ESQ. (SBN 222689)
PRISCILLA MOON, ESQ. (SBN 2220819)
5000 BIRCH STREET, SUITE 3000
NEWPORT BEACH, CA 92660
PHONE: (949) 260-2004
FACSIMILE: (949) 861-9922
EMAIL: ed@cottonemoon.com

ATTORNEYS FOR PLAINTIFF
CULP CONSTRUCTION COMPANY

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CULP CONSTRUCTION COMPANY, <br><br> Plaintiff, <br><br> vs. <br><br> JARED MARK SPOSITO dba 19TH GREENS; and DOES 1 through 20, inclusive, <br><br> Defendants. | Case No. 8:19-cv-00727-JVS-ADS <br><br> Judge: Hon. James V. Selna <br><br> **PLAINTIFF CULP CONSTRUCTION COMPANY'S NOTICE OF MOTION AND MOTION FOR DEFAULT JUDGMENT AGAINST JARED MARK SPOSITO DBA 19TH GREENS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** <br><br> Date: July 29, 2019 <br> Time: 1:30 P.M. <br> Place: Courtroom 10C |

COTTONE & MOON
LITIGATION ATTORNEYS

1

**TO DEFENDANT JARED SPOSITO AND HIS COUNSEL:**

**PLEASE TAKE NOTICE** that on July 29, 2019 at 1:30 P.M., or as soon thereafter as this matter can be heard, before the Hon. James V. Selna in Courtroom 10C of the above-entitled Court, located at 411 West 4th Street, Santa Ana, CA 92701, Plaintiff Culp Construction Company ("Culp" or "Plaintiff") will and hereby does move the Court pursuant to Fed. R. Civ. P. 55(b)(2) and L.R. 55-1 for an order entering default judgment against Defendant Jared Mark Sposito dba 19th Greens ("Sposito" or "Defendant") on Culp's claims in its complaint for (1) breach of contract; (2) money had and received (common count); (3) fraud and deceit; (4) conversion; (5) civil liability for violation of Pen. Code § 496; and (6) violation of Bus. & Prof. Code § 17200, *et seq.*, in the sum of **$127,171.80**, which *does not* include Culp's reasonable attorneys' fees in accordance with L.R. 55-3, Culp's costs incurred in this action, and punitive damages.

This Motion is based on this Notice of Motion, the Motion, the supporting Memorandum of Points and Authorities, the Declaration of Jon Easter, the Declaration of Edwin R. Cottone, Esq., all other files and records in this action, and upon such arguments and submissions that may be presented to the Court at or before the hearing on this Motion.

Dated:  June 26, 2019                    Respectfully submitted,

/s Edwin R. Cottone
_____
Edwin R. Cottone, Esq. (SBN 222689)
COTTONE & MOON
5000 Birch Street, Suite 3000
Newport Beach, CA 92660
Telephone: (949) 260-2004
Facsimile: (949) 861-9922
Email: ed@cottonemoon.com
*Attorneys for Plaintiff*
*Culp Construction Company*

2

# TABLE OF CONTENTS

I.   INTRODUCTION ...................................................................................1

II.  FACTUAL BACKGROUND ...................................................................2

III. ARGUMENT .........................................................................................4

   A. LEGAL STANDARD FOR DEFAULT JUDGMENT ...........................4

   B. SUBSTANTIVE MERITS AND SUFFICIENCY OF THE CLAIMS.....6

      1.  BREACH OF CONTRACT ..........................................................6

      2.  MONEY HAD AND RECEIVED (COMMON COUNT).............7

      3.  FRAUD AND DECEIT ...............................................................8

      4.  CONVERSION ........................................................................10

      5.  CIVIL LIABILITY FOR VIOLATION OF PEN. CODE § 496..11

      6.  VIOLATION OF BUS. & PROF. CODE § 17200, ET SEQ.........12

   C. THE MONETARY JUDGMENT REQUESTED BY CULP IS
      REASONABLE .........................................................................13

   D. THERE IS NO POSSIBILITY OF A DISPUTE CONCERNING
      MATERIAL FACTS ..................................................................17

   E. THERE IS NO EXCUSABLE NEGLECT BY SPOSITO ...................17

   F.  POLICY FAVORING DECISIONS ON THE MERITS DOES NOT
      PRECLUDE ENTERING DEFAULT JUDGMENT IN THIS CASE...18

   G. THE REQUIREMENTS OF L.R. 55-1 ARE SATISFIED.....................19

IV. CONCLUSION......................................................................................19

PLAINTIFF CULP CONSTRUCTION COMPANY'S MOTION FOR DEFAULT JUDGMENT
AGAINST DEFENDANT JARED MARK SPOSITO DBA 19TH GREENS

COTTONE & MOON
LITIGATION ATTORNEYS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Acoustics, Inc. v. Trepte Construction Co.*, 14 Cal.App.3d 887 (1971)...................6

*Adams v. Murakami*, 54 Cal.3d 105 (1991)..............................................16

*Avidor v. Sutter's Place, Inc.*, 212 Cal.App.4th 1439 (2013)..................................8

*Bank of the West v. Superior Ct.*, 2 Cal.4th 1254 (1992) ................................13

*Beckwith v. Dahl*, 205 Cal.App.4th 1039 (2012)...........................................8

*Bell v. Feibush*, 212 Cal.App.4th 1041 (2013) ................................... 11, 12

*Brandon & Tibbs v. George Kevorkian Accountancy Corp.*, 226 Cal.App.3d 442 (1990)................................................................................7

*Brown v. Grimes*, 192 Cal.App.4th 265 (2011) ........................................6

*Children's Hosp. & Med. Ctr. v. Bonta*, 97 Cal.App.4th 740 (2002).....................14

*Danning v. Lavine*, 572 F.2d 1386 (9th Cir. 1978)..........................................6

*Davis v. Ford Motor Credit Co., LLC*, 179 Cal.App.4th 581 (2009).....................12

*Eitel v. McCool*, 782 F.2d 1470 (9th Cir. 1986) .........................................5

*Elektra Ent. Group Inc. v. Crawford*, 226 F.R.D. 388 (C.D. Cal. 2005) ...............17

*Engalla v. Permanente Med. Group, Inc.*, 15 Cal.4th 951 (1997) ..........................9

*Erlich v. Menezes*, 21 Cal.4th 543 (1999)...............................................9

*Federal Nat'l Mortg. Ass'n v. George*, No. 5:14-cv-01679-VAP-SP, 2015 WL 4127958 (C.D. Cal. July 7, 2015)...............................................6

*Fulton v. Bank of America N.A.*, No. 2:16-cv-04870-CAS (JCx), 2016 WL 7156440 (C.D. Cal. Dec. 6, 2016)..............................................5

*Haigler v. Donnelly*, 18 Cal.2d 674 (1941) ...........................................10

*Hernandez v. Madrigal*, No. 2:09-cv-00413-MCE-GGH, 2011 WL 6936364 (E.D. Cal. Dec. 30, 2011)...................................................5

*J.C. Peacock, Inc. v. Hasko*, 196 Cal.App.2d 353 (1961) ........................................8

COTTONE & MOON
LITIGATION ATTORNEYS

*Kaylor v. Crown Zellerbach, Inc.*, 643 F.2d 1362 (9th Cir. 1981) ..........................9

*Kloepping v. Fireman's Fund*, No. C 94-2684 TEH, 1996 WL 75314 (N.D. Cal. Feb. 14, 1996).............................................................................................18

*Lee v. Hanley*, 61 Cal.4th 1225 (2015) ...........................................................10

*Mains v. City Title Ins. Co.*, 34 Cal.2d 580 (1949).........................................7

*McBride v. Boughton*, 23 Cal.App.4th 379 (2004)...........................................7

*PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLP*, 150 Cal.App.4th 384 (2007) ...............................................................................10

*PepsiCo, Inc. v. California Sec. Cans*, 238 F. Supp.2d 1172 (C.D. Cal. 2002).. 5, 6, 18

*Philip Morris USA, Inc. v. Castworld Products, Inc.*, 219 F.R.D. 494 (C.D. Cal. 2003)........................................................................................................5

*Podosky v. First Healthcare Corp.*, 50 Cal.App.4th 632 (1996)...........................12

*Shanghai Automation Instrument Co., Ltd. v. Kuei*, 194 F. Supp.2d 995 (N.D. Cal. 2001)........................................................................................................16

*State Farm Fire & Casualty Co. v. Superior Ct.*, 45 Cal.App.4th 1093 (1996)......12

*Stein v. Southern Cal. Edison Co.*, 7 Cal.App.4th 565 (1992) ...............................14

*TeleVideo Sys. v. Heidenthal*, 826 F.2d 915 (9th Cir. 1987) .........................5, 17

*Tenet Healthsystem Desert, Inc. v. Blue Cross of Cal.*, 245 Cal.App.4th 821 (2016) ........................................................................................................9

*United States v. Broaster Kitchen, Inc.*, No. 2:14-cv-09421-MMM, 2015 WL 4545360 (C.D. Cal. May 27, 2015)...................................................................13

*Utility Audit Co., Inc. v. City of Los Angeles*, 112 Cal.App.4th 950 (2003) ............8

*Walters v. Statewide Concrete Barrier, Inc.*, No. 04-cv-02559-JSW, 206 WL 2527776 (N.D. Cal. Aug. 30, 2006) .................................................................15

COTTONE & MOON
LITIGATION ATTORNEYS

iii

*Watson Labs., Inc. v. Rhone-Poulenc Rorer, Inc.*, 178 F. Supp.2d 1099 (C.D. Cal. 2001) ..................................................................................................12

**Statutes**

Bus. & Prof. Code § 17200 ................................................... 2, 1, 12

Bus. & Prof. Code § 17203 ...............................................................13

Civ. Code § 3288 ...............................................................................14

Civ. Code § 3289(b) ..........................................................................14

Civ. Code § 3294(a) ..........................................................................10

Civ. Code § 3333 ................................................................................9

COTTONE & MOON
LITIGATION ATTORNEYS

iv

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

This action concerns the failure of Defendant Jared Sposito dba 19th Greens ("Sposito" or "Defendant") to perform his contractual obligations, as well as his unlawful theft of Plaintiff Culp Construction Company's ("Culp" or "Plaintiff") money. Culp retained Sposito as a subcontractor to install artificial turf for a construction project. Not only did Sposito fail to perform any actual work on the project, he submitted a fraudulent bill for materials for his purported work that, in reality, he never delivered. After Culp paid the bill (in reliance on Sposito's false promises and representations), Sposito effectively disappeared, causing Culp to incur substantial costs to make up for Sposito's complete no-show on the project.

On April 19, 2019, Culp filed the complaint in this action, asserting causes of action for (1) breach of contract; (2) money had and received (common count); (3) fraud and deceit; (4) conversion; (5) civil liability for violation of Pen. Code § 496; and (6) violation of Bus. & Prof. Code § 17200, *et seq.* [Dkt. #1.] On May 1, 2019, Sposito was personally served with the summons and complaint. [Dkt. #10.] Under Fed. R. Civ. P. 12(a), Sposito had until May 22, 2019 to answer or otherwise respond to the complaint. He failed to do so. On June 20, 2019, default was properly entered against Sposito by the Clerk of the Court. [Dkt. #12.]

By this motion, Culp now seeks entry of default judgment against Sposito in the sum of **$127,171.80**, which consists of Culp's damages and prejudgment interest as authorized by law. This amount *does not* include punitive damages, for which Culp requests that the Court set a future hearing to accept evidence sufficient to support an award of punitive damages to be added to the judgment.

The foregoing amount also does not include Culp's reasonable attorneys' fees, which Culp is entitled to recover under the terms of the parties' agreement.

COTTONE & MOON
LITIGATION ATTORNEYS

1

Because L.R. 55-3 (which applies in default judgment cases) sets forth a schedule for an award of attorneys' fees that is based upon the amount of the judgment, and because the final amount of the judgment in this case (exclusive of costs) will depend on any award of punitive damages by the Court, Culp will seek its attorneys' fees by noticed motion after judgment has been entered and the Court has ruled on punitive damages.

Finally, the amount sought by this motion also does not include Culp's costs incurred in this action, for which Culp will submit an application to the Clerk of the Court to tax costs pursuant to Fed. R. Civ. P. 54(d) and L.R. 54-2.

## II.    FACTUAL BACKGROUND

Culp is the general contractor on a construction project located at the Maui Mall, 70 E. Kaahumanu Ave., Kahului, Hawaii 96732 ("Maui Mall Project"). (Comp. ¶ 10.)  On or about August 30, 2018, Culp entered into a subcontract with Sposito, who conducts business under the registered trade name "19th Greens."[1] (*Id*. ¶¶ 2, 11, Ex. A.)  Under the subcontract, Sposito was to install artificial turf at the Maui Mall Project for the contractual sum of $71,250.00.  (*Id*. ¶ 11.)

On or about August 30, 2018, Sposito submitted a fraudulent bill to Culp for a deposit for materials for his purported work on the Maui Mall Project in the amount of $21,353.62.[2]  (*Id*. ¶ 12, Ex. B.)  On October 3, 2018, Culp paid this bill in full.  (*Id*. ¶ 13, Ex. C.)  Culp made the aforementioned payment based on Sposito's promises and representations that he would duly perform his contractual obligations in accordance with the terms of the subcontract.  (*Id*. ¶ 14.)  These

---

[1] Sposito is a resident of Colorado, but conducts business nationally, including in California. (Compl. ¶ 3.)  In addition, with respect to this case, Sposito has engaged in intentional and fraudulent acts that were directly targeted at California, which resulted in harm that Sposito clearly knew would be suffered in this state.  (*Id*.)

[2] The fraudulent bill was sent by Sposito to Culp's offices located at 1 Technology Drive, #D411, Irvine, CA 92618.  (Compl., Ex. B.)

2

promises and representations, which were nothing more than lies, were made by Sposito to David Brown, then-Project Manager for Culp, in a number of emails and telephone calls in or around September and October 2018.  (*Id*.)

Contrary to his promises and representations, Sposito never performed any of his contractual obligations.  (*Id*. ¶ 15.)  In addition, Sposito failed to deliver the materials for which he fraudulently billed to Culp (and which Culp paid to Sposito).  (*Id*.)  As a direct result of Sposito's fraudulent actions and contractual breach, Culp suffered significant damages, which included the following:

- $21,353.62 that Culp paid for the fraudulent bill as described above. (Declaration of Jon Easter ("Easter Decl.") ¶¶ 6-7, Exs. B & C.)

- $14,025.14 that Culp was forced to expend to install temporary sod and landscaping at the Maui Mall Project to make certain areas safe while Culp searched for a new subcontractor to perform the work that Sposito was contracted, but failed, to do.  (*Id*. ¶ 11, Ex. D.)

- $2,864.00 in lost business time that Culp (specifically, Mr. Brown) had to expend in an effort to track down Sposito (who effectively disappeared after fraudulently stealing Culp's money and was non-responsive to Culp's repeated inquiries regarding this matter) and set up contingencies for Sposito's complete no-show.  Mr. Brown expended approximately 32 hours of business time at a billable rate of $89.50 per hour.  (*Id*. ¶ 12.)

- $31,402.70 in general condition costs as a result of the delay (35 days) that Sposito's no-show caused to the Maui Mall Project, during which Culp had to find another artificial turf contractor and order turf/scheduling crews.  (*Id*. ¶ 13.)

- $4,724.61 for the higher price of the replacement subcontractor that

COTTONE & MOON
LITIGATION ATTORNEYS

3

Culp retained to perform the work that Sposito was contracted, but failed, to do. As noted above, the contract price for the subcontract between Culp and Sposito was $71,250.00. (*Id.* ¶ 14.)

- $361.35 in costs to close off certain areas of the Maui Mall Project while the temporary sod (that was installed while Culp diligently searched for a replacement subcontractor) was removed in preparation for work by the replacement subcontractor. (*Id.* ¶ 15.)
- $8,344.74 in costs for barricades to secure certain areas of the Maui Mall Project as directed by the owner of the property due to Sposito's no-show. (*Id.* ¶ 16, Ex. E.)

In total, Culp suffered $83,076.16 in damages as summarized above. Furthermore, under the terms of the parties' agreement, Culp is entitled to recover its reasonable attorneys' fees incurred in this matter. Specifically, section 31 of the subcontract provides that "[s]hould either party employ an attorney to institute suit or demand arbitration to enforce any of the provisions hereof, to protect its interests in any manner arising under this Subcontract Agreement, or to recover on a surety bond furnished by a party to this Subcontract Agreement, the prevailing party shall be entitled to recover reasonable attorneys' fees, costs, charges, and expenses expended or incurred therein." (Comp., Ex. A at § 31.) In addition, Culp should be awarded other statutory and punitive damages, as well as prejudgment interest, as discussed further below.

## III. ARGUMENT

### A. Legal Standard for Default Judgment

Rule 55(b)(2) of the Federal Rules of Civil Procedure allows for a court-ordered default judgment following an entry of default when a party has failed to plead or otherwise defend an action. Upon an entry of default, factual allegations

COTTONE & MOON
LITIGATION ATTORNEYS

of the complaint, except those relating to damages, will be taken as true. (*See TeleVideo Sys. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987).) As to the plaintiff's damages, the Court may consider declarations and exhibits supporting a damages award. (*See* L.R. 55-2 ("If the amount claimed in a judgment by default is unliquidated, the applicant may submit evidence of the amount of damages by declarations"); *Hernandez v. Madrigal*, No. 2:09-cv-00413-MCE-GGH, 2011 WL 6936364, at *3 (E.D. Cal. Dec. 30, 2011) ("[D]etailed declarations and other documentary evidence may be sufficient in place of an evidentiary hearing").)

The Ninth Circuit has set forth the following factors that the Court should consider in determining whether to enter default judgment: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claims; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. (*See Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).)

## A. Possibility of Prejudice

With respect to this *Eitel* factor, courts have emphasized that a plaintiff is prejudiced if he "will likely be without other recourse for recovery" because of the defendant's failure to appear or defend the action. (*PepsiCo, Inc. v. California Sec. Cans*, 238 F. Supp.2d 1172, 1177 (C.D. Cal. 2002); *see also Philip Morris USA, Inc. v. Castworld Products, Inc.*, 219 F.R.D. 494, 499 (C.D. Cal. 2003).) Likewise, because Sposito has not appeared and failed to defend this action, Culp will be without any other recourse for recovery unless default judgment is entered against him. (*See Fulton v. Bank of America N.A.*, No. 2:16-cv-04870-CAS (JCx), 2016 WL 7156440, at *3 (C.D. Cal. Dec. 6, 2016) (noting that a plaintiff is without

5

COTTONE & MOON
LITIGATION ATTORNEYS

other recourse for recovery where the defendant has not appeared or defended the case).)  Thus, the first *Eitel* factor weighs in favor of entering default judgment.

## B. Substantive Merits and Sufficiency of the Claims

The second and third *Eitel* factors are typically considered together.  (*See PepsiCo*, 238 F. Supp.2d at 1175.)  "The issue here is whether the allegations in the complaint are sufficient to state a claim . . . ."  (*Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978); *see also Federal Nat'l Mortg. Ass'n v. George*, No. 5:14-cv-01679-VAP-SP, 2015 WL 4127958, at *3 (C.D. Cal. July 7, 2015) ("The merits of the plaintiff's substantive claim and the sufficiency of the complaint are often treated by courts as the most important *Eitel* factors").)  In this case, Culp has sufficiently pleaded each of the causes of action asserted in its complaint.

### 1. Breach of Contract

The following elements must be established for a breach of contract claim: "(1) the contract, (2) plaintiff's performance or excuse for non-performance, (3) defendant's breach, and (4) damage to plaintiff therefrom."  (*Acoustics, Inc. v. Trepte Construction Co.*, 14 Cal.App.3d 887, 913 (1971).)  All of these elements are clearly satisfied here.

Culp and Sposito entered into a valid agreement under which Sposito was to install artificial turf at the Maui Mall Project.  (Compl. ¶ 11.)  However, Sposito failed to perform his contractual obligations, and instead stole over $21,000 from Culp through a fraudulent bill and false representations.  (*Id*. ¶¶ 12-15, 26.)  Culp has performed all conditions, covenants, and promises required on its part to be performed under the parties' contract, and/or such obligations have been excused due to Sposito's material breach of the agreement.  (*Id*. ¶ 25; *see also Brown v. Grimes*, 192 Cal.App.4th 265, 277 (2011) ("When a party's failure to perform a contractual obligation constitutes a material breach of the contract, the other party

may be discharged from its duty to perform under the contract").)

As a direct and proximate result of Sposito's contractual breach, Culp suffered significant damages as described above in Section II, *supra*. It should be emphasized that all such damages were (at the very least) reasonably foreseeable, as it was patently obvious that any failure by Sposito to perform his contractual obligations would have adverse ramifications for the Maui Mall Project (*e.g.*, result in delay to the construction project, cause Culp to incur extensive costs to find another subcontractor, etc.). (*See Brandon & Tibbs v. George Kevorkian Accountancy Corp.*, 226 Cal.App.3d 442, 458 (1990) (emphasizing that while consequential damages sought must be reasonably foreseeable, "[t]he existing rule requires only reason to foresee, not actual foresight. It does not require that the defendant should have had the resulting injury actually in contemplation or should have promised either impliedly or expressly to pay therefor in case of breach").)

### 2. Money Had and Received (Common Count)

Culp has also sufficiently stated a claim for money had and received. "A common count is not a specific cause of action . . . [but] rather, it is a simplified form of pleading normally used to aver the existence of various forms of monetary indebtedness, including that arising from an alleged duty to make restitution under an assumpsit theory." (*McBride v. Boughton*, 23 Cal.App.4th 379, 394 (2004).) "Although such an action is one at law, it is governed by principles of equity. It may be brought . . . wherever one person has received money which belongs to another, and which in equity and good conscience, or in other words, in justice and right, should be returned." (*Mains v. City Title Ins. Co.*, 34 Cal.2d 580, 586 (1949) (internal quotation marks and citations omitted).)

"A cause of action for money had and received is stated if it is alleged [that] the defendant is indebted to the plaintiff in a certain sum for money had and

COTTONE & MOON
LITIGATION ATTORNEYS

received by the defendant for the use of the plaintiff.  The claim is viable whenever one person has received money which belongs to another, and which in equity and good conscience should be paid over to the latter." (*Avidor v. Sutter's Place, Inc.*, 212 Cal.App.4th 1439, 1454 (2013) (internal quotation marks and citations omitted); *see also Utility Audit Co., Inc. v. City of Los Angeles*, 112 Cal.App.4th 950, 958 (2003) ("A claim for money had and received can be based upon money paid by mistake, money paid pursuant to a void contract, or a performance by one party of an express contract").)

As discussed above, Culp paid a fraudulent bill submitted by Sposito in the amount of $21,353.62 for a deposit of materials for his purported work on the Maui Mall Project, which he never delivered. (Compl. ¶¶ 12-15.)  Obviously, such funds were intended to be used for Culp's benefit, which Sposito instead kept for himself. (*Id*. ¶¶ 30-32.)  Having been unjustly enriched by his fraudulent conduct, it would be simply inequitable to allow Sposito to retain these funds. (*See J.C. Peacock, Inc. v. Hasko*, 196 Cal.App.2d 353, 361 (1961) ("It is well established in our practice that an action for money had and received will lie to recover money paid by mistake, under duress, oppression or where an undue advantage was taken of plaintiffs' situation whereby money was exacted to which the defendant had no legal right") (quotation marks and citation omitted).)

### 3.  Fraud and Deceit

"The elements of fraud, which give rise to the tort of deceit are (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." (*Beckwith v. Dahl*, 205 Cal.App.4th 1039, 1059-60 (2012) (internal quotation marks and citations omitted); *see also Tenet Healthsystem Desert, Inc. v. Blue Cross of Cal.*, 245

8

COTTONE & MOON
LITIGATION ATTORNEYS

Cal.App.4th 821, 839 (2016) ("[F]raud may arise from conduct that is designed to mislead, and not only from written statements").)  All of these elements are met.

Sposito entered into the subcontract without any actual intention of performing his obligations thereunder.  (Comp. ¶ 36; *see also Engalla v. Permanente Med. Group, Inc.*, 15 Cal.4th 951, 973-74 (1997) ("'Promissory fraud' is a subspecies of fraud and deceit.  A promise to do something necessarily implies the intention to perform; hence, where a promise is made without such intention, there is an implied misrepresentation that may be actionable fraud").)  After executing the subcontract, Sposito never performed any work.  Rather, he quickly submitted a fraudulent bill for a deposit of materials for his purported work that he never delivered and had no intention of ever delivering.  (Compl. ¶¶ 12-15, 36; *see also Kaylor v. Crown Zellerbach, Inc.*, 643 F.2d 1362, 1368 (9th Cir. 1981) (noting that "fraud may be inferred from an immediate failure to perform a promise").)

Culp entered into the subcontract, as well as paid the fraudulent bill, based on repeated representations and assurances by Sposito that he would he would duly perform his contractual obligations in accordance with the parties' agreement.  (Compl. ¶¶ 14, 37.)  Had Culp known of the fraudulent nature of Sposito's words and conduct, it would have never entered into the subcontract or paid any amounts to him.  (*Id*. ¶ 37.)  As it stands, Culp suffered extensive damages due to Sposito's fraud as described above in Section II, *supra*.  All such damages are recoverable regardless of whether or not they were foreseeable.  (*See* Civ. Code § 3333 ("For the breach of an obligation not arising from contract, the measure of damages, except where otherwise expressly provided by this Code, is the amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not"); *Erlich v. Menezes*, 21 Cal.4th 543, 551 (1999) (emphasizing that in contrast to contract damages, "tort damages are awarded to

COTTONE & MOON
LITIGATION ATTORNEYS

9

[fully] compensate the victim for [all] injury suffered") (bracketed language in original) (internal quotation marks and citation omitted).)

Furthermore, given the egregiousness of Sposito's actions, punitive damages are warranted here. (*See* Civ. Code § 3294(a) ("In an action for the breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, ***fraud***, or malice, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant") (emphasis added).)

### 4. Conversion

"Conversion is the wrongful exercise of dominion over the property of another. The elements of a conversion claim are: (1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages." (*Lee v. Hanley*, 61 Cal.4th 1225, 1240 (2015).) Money can properly be the subject of a cause of action for conversion if a "specific, identifiable sum" is involved. (*PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLP*, 150 Cal.App.4th 384, 395 (2007); *see also Haigler v. Donnelly*, 18 Cal.2d 674, 681 (1941) ("While it is true that money cannot be the subject of an action for conversion unless a specific sum capable of identification is involved, it is not necessary that each coin or bill be earmarked") (internal citation omitted).)

Culp has sufficiently stated a cause of action for conversion. As discussed above, through false and fraudulent billing practices, Sposito wrongfully stole $21,353.62 from Culp. Such money is a "specific, identifiable sum" and rightfully belongs to Culp. Although Culp has demanded its money back, Sposito has failed to return the money. (Compl. ¶¶ 42-43.) As a result of Sposito's unlawful theft of its money, Culp undeniably has been damaged. Additionally, given the fraudulent

COTTONE & MOON
LITIGATION ATTORNEYS

nature of Sposito's misconduct in this case, punitive damages are warranted as noted in Section III.C.3, *supra*.

### 5. Civil Liability for Violation of Pen. Code § 496

Section 496(a) of the Penal Code provides that buying or ***receiving* any property "*that has been obtained in any manner constituting theft*** or extortion, knowing the property to be stolen or obtained, or who conceals, sells, withholds, or aids in concealing, selling, or withholding any property from the owner, knowing the property to be so stolen or obtained" is a criminal offense punishable by imprisonment. (*Bell v. Feibush*, 212 Cal.App.4th 1041, 1048 (2013) (emphasis added).) The phrase "any manner constituting theft" under Pen. Code § 496(a) has been broadly construed and includes theft by false pretense or misrepresentation. As emphasized in *Bell*, Pen. Code § 484(a) describes such instances of "theft" to include the following: "Every person . . . who shall knowingly and designedly, by any ***false or fraudulent representation or pretense, defraud any other person of money***, labor or real or personal property . . . ***is guilty of theft***." (*Bell*, 212 Cal.App.4th at 1048 (emphasis added).)

Section 496(c) of the Penal Code allows a victim of such theft to bring a civil action to recover treble damages against the wrongdoer: "Any person who has been injured by a violation of subdivision (a) . . . may bring an action for three times the damages, if any, sustained by the plaintiff, costs of suit, and reasonable attorney's fees." A criminal conviction under Section 496(a) is not required for a plaintiff to recover treble damages under Section 496(c) in a civil action. (*See Bell*, 212 Cal.App.4th at 1047.)

As previously discussed, Sposito wrongfully obtained stolen property (*i.e.*, Culp's money) through false pretense (fraudulent billing and misrepresentations). (Compl. ¶¶ 12-15, 52.) As such, Sposito violated Section 496(a). (*See Bell*, 212

11

Cal.App.4th at 1049 (holding that plaintiff was entitled to recover treble damages under Section 496(c) because "Feibush was found liable for fraud, i.e., for the fraudulent acquisition of property (money) from its owner (Bell). Anything that could be the subject of a theft can also be property under section 496. A principal in the actual theft of the property may be convicted for either theft or receiving stolen property under section 496(a)") (internal quotation marks and citation omitted).) Accordingly, as to this cause of action, Culp is entitled to recover treble damages in the total amount of $64,060.86 for Sposito's theft of Culp's money ($23,353.62 x 3). In addition, Culp is also entitled to recover its reasonable attorneys' fees incurred in this action as expressly provided under Section 496(c).

## 6. Violation of Bus. & Prof. Code § 17200, et seq.

California prohibits "unfair competition," which is defined to include "any unlawful, unfair or fraudulent business act." (Bus. & Prof. Code § 17200; *see also Podosky v. First Healthcare Corp.*, 50 Cal.App.4th 632, 647 (1996) ("[A]ny unlawful, unfair or fraudulent business act or practice is deemed to be unfair competition"). "The statute imposes strict liability. It is not necessary to show the defendant intended to injure anyone." (*State Farm Fire & Casualty Co. v. Superior Ct.*, 45 Cal.App.4th 1093, 1102 (1996).)

"Unlawful" business acts include "practices forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made." (*Watson Labs., Inc. v. Rhone-Poulenc Rorer, Inc.*, 178 F. Supp.2d 1099, 1120 (C.D. Cal. 2001).) "Unfair" business acts include practices that "offend[] an establish public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious . . . ." (*Davis v. Ford Motor Credit Co., LLC*, 179 Cal.App.4th 581, 595 (2009); *see also State Farm*, 45 Cal.App.4th at 1103 (emphasizing that the "[unfair] standard is intentionally broad, thus allowing

12

courts maximum discretion to prohibit new schemes to defraud").)

As discussed previously, Sposito engaged in business acts that were clearly "unlawful" and "unfair" as defined above, as well as undeniably "fraudulent," including engaging in fraudulent billing practices to steal over $21,000 of Culp's money, making false representations and promises, and entering into the parties' agreement with no intention of fulfilling his contractual obligations thereunder. (Compl. ¶¶ 12-15, 36-37, 57.)

Because of Sposito's violation of California's unfair competition law ("UCL"), Culp is entitled to restitution of all amounts obtained by Sposito from his wrongful business practices.  (*See* Bus. & Prof. Code § 17203 ("The court may make such orders or judgment . . . as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition"); *see also Bank of the West v. Superior Ct.*, 2 Cal.4th 1254, 1266 (1992) (noting that relief under the UCL includes "disgorgement of money that has been wrongfully obtained").)

### C. The Monetary Judgment Requested by Culp is Reasonable

The determination of the fourth *Eitel* factor "requires a comparison of the recovery sought and the nature of defendant's conduct to determine whether the remedy is appropriate."  (*United States v. Broaster Kitchen, Inc.*, No. 2:14-cv-09421-MMM, 2015 WL 4545360, at *6 (C.D. Cal. May 27, 2015); *see also PepsiCo*, 238 F. Supp.2d at 1176 (requiring the Court to consider "the amount of money at stake in relation to the seriousness of Defendant's conduct").)

Here, the monetary judgment sought by Culp in this motion is commensurate with the actual harm that it suffered, as well as the egregiousness of Sposito's unlawful and fraudulent conduct.  More specifically, the monetary judgment that Culp seeks in the amount of **127,171.80** consists of the following:

13

COTTONE & MOON
LITIGATION ATTORNEYS

- **$64,060.86**, which represents 3 times the amount ($21,353.62) that Sposito fraudulently billed to and stole from Culp (this amount is authorized by Pen. Code § 496(c) as discussed above in Section III.C.5, *supra*).

- **$61,722.54**, which represents Culp's damages as a direct and proximate result of Sposito's unlawful and fraudulent conduct as detailed in Section II, *supra* (excluding the $21,353.62 that Sposito stole from Culp, which is accounted for in the prior entry).

- **$1,388.40**, which represents prejudgment interest on Culp's damages ($83,076.16, which includes the $21,353.62 that Sposito stole from Culp plus the remaining $61,722.54 in damages).[3]  In situations involving a breach of contract, a plaintiff is entitled to recover prejudgment interest at a rate of 10% per annum where the contract does not specify an interest rate, which is the case here.[4]  (*See* Civ. Code § 3289(b) ("If a contract entered into after January 1, 1986, does not stipulate a legal rate of interest, the obligation shall bear interest at a rate of 10 percent per annum after a breach").)  Because each item of damages suffered by Culp were incurred at different times from early October 2018 to early April 2019, to simplify this calculation,

---

[3] The complaint miscalculated this amount as $80,212.16, as it inadvertently did not include the $2,864.00 for Culp's lost business time to set up contingencies for Sposito's no-show.  Such amount for Culp's lost business time, however, was specifically mentioned in paragraph 17 of the complaint.

[4] Prejudgment interest can also be awarded at an interest rate of 7% per annum for tort claims. (*See* Civ. Code § 3288 ("In an action for the breach of an obligation not arising from contract, and in every case of oppression, fraud, or malice, interest may be given, in the discretion of the jury"); *Stein v. Southern Cal. Edison Co.*, 7 Cal.App.4th 565, 572 (1992) ("Section 3288 . . . allows interest from the date of monetary loss at the discretion of the trier of fact even if the damages are unliquidated"); *Children's Hosp. & Med. Ctr. v. Bonta*, 97 Cal.App.4th 740, 775 (2002) (noting that for tort claims, the prejudgment interest rate is fixed by California Constitution, Article 15, Section 1, which is 7% per annum).)

14

---

COTTONE & MOON
LITIGATION ATTORNEYS

Culp has opted to calculate prejudgment interest from the date of the filing of the complaint (April 19, 2019).  Calculating 10% (simple) interest on $83,076.16 from April 19, 2019 to June 19, 2019 yields $1,388.40.

The foregoing amounts directly correlate to the harm suffered by Culp or are expressly authorized under relevant statutes.  As such, the monetary judgment sought by Culp is more than "reasonable."  (*See Walters v. Statewide Concrete Barrier, Inc.*, No. 04-cv-02559-JSW, 206 WL 2527776, at *4 (N.D. Cal. Aug. 30, 2006) ("If the sum of money at issue is reasonably proportionate to the harm caused by the defendant's actions, then default judgment is warranted").)

In addition, with respect to its tort claims (fraud and conversion), Culp should be awarded punitive damages due to the despicable nature of Sposito's misconduct as discussed above.  Indeed, the harm suffered by Culp at the hands of Sposito was significant.  Financially, Sposito's fraudulent actions and failure to perform his contractual obligations adversely impacted Culp's overhead and profit margin on the Maui Mall Project.  (Easter Decl. ¶ 17.)  It has also detrimentally affected Culp's liability insurance cost as well.  (*Id*.)

Moreover, Culp ultimately bore the brunt of the blame and responsibility for the delays to the project, including having to embarrassingly explain what happened with Sposito's complete no-show and disappearance from the project (after stealing Culp's money) to the client/owner.  (*Id*. ¶ 18.)  As such, in addition to the financial setback and harm noted above, Culp's business reputation (which has been built up for well over a half-century) was also damaged.  (*Id*.)

Given the harm suffered by Culp and the reprehensible conduct of Sposito, Culp respectfully requests an award of punitive damages in the amount of **$185,167.62**, which is three times the damages that Culp suffered as a direct result

15

COTTONE & MOON
LITIGATION ATTORNEYS

of Sposito's unlawful actions (excluding the $21,353.62 that Sposito stole from Culp through fraudulent billing, which will already be trebled in accordance with Pen. Code § 496(c) as noted above) – *i.e.*, $61,722.54 x 3.

Because a defendant's financial condition and ability to pay are essential factors in an award of punitive damages under California law, Culp requests that the Court set a future hearing to accept evidence sufficient to support an award of punitive damages in the amount of $185,167.62. (*See Adams v. Murakami*, 54 Cal.3d 105, 119 (1991) ("[E]vidence of the defendant's financial condition is a prerequisite to a punitive damages award"); *Shanghai Automation Instrument Co., Ltd. v. Kuei*, 194 F. Supp.2d 995, 1011 (N.D. Cal. 2001) ("In determining whether punitive damages are appropriate, the Court cannot make a fully informed determination of whether an award of punitive damages is excessive unless the record contains evidence of [the defendants'] financial condition") (internal quotation marks and citations omitted).)

Furthermore, in addition to the above amounts, Culp is also entitled to recover its reasonable attorneys' fees incurred in this matter. (*See* Fed. R. Civ. P. 54(d)(1) (authorizing the recovery of attorneys' fees if allowed by statute; Civ. Code § 1717(a) ("In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs").) As noted in Section II, *supra*, section 31 of the parties' agreement authorizes the prevailing party to recover reasonable attorneys' fees in a lawsuit between the parties.

In default judgment cases, L.R. 55-3 sets forth a schedule for an award of

16

attorneys' fees that is based upon the amount of the judgment.  For a judgment over $100,000, the amount of attorneys' fees to be awarded upon a default judgment is "$5600 plus 2% of the amount over $100,000."  Because the final amount of the judgment in this case (exclusive of costs) will depend on any award of punitive damages by the Court, Culp will seek its attorneys' fees by noticed motion in accordance with Fed. R. Civ. P. 54(d)(2) after judgment has been entered and the Court has ruled on punitive damages.[5]

Lastly, Culp is entitled to recover its costs incurred in this action.  (*See* Fed. R. Civ. P. 54(d)(1) ("Unless a federal statute, these rules, or a court order provides otherwise, costs – other than attorney's fees – should be allowed to the prevailing party").)  After judgment has been entered and the Court has ruled on punitive damages in this case, Culp will submit an application to the Clerk of the Court to tax costs in accordance with Fed. R. Civ. P. 54(d) and L.R. 54-2.

### D. There is No Possibility of a Dispute Concerning Material Facts

Default was entered by the Clerk of the Court against Sposito on June 20, 2019.  [Dkt. #12.]  Correspondingly, all factual allegations in Culp's complaint against him are deemed true.  (*See TeleVideo Sys.*, 926 F.2d at 917-18.)  As such, because all allegations are accepted as true, "there is no likelihood that any genuine issue of material fact exists."  (*Elektra Ent. Group Inc. v. Crawford*, 226 F.R.D. 388, 393 (C.D. Cal. 2005).)  Thus, this factor weighs in favor of entering default judgment.

### E. There is No Excusable Neglect by Sposito

There is simply no indication that default was entered due to Sposito's

---

[5] For illustrative purposes, if solely using the amount sought in this motion ($127,121.80) without any punitive damages, the award of attorneys' fees under L.R. 55-3 would be $6,142.44. If the punitive damages sought by Culp are included (resulting in a total judgment of $312,289.42), the award of attorneys' fees under L.R. 55-3 would be $9,845.79.

17

COTTONE & MOON
LITIGATION ATTORNEYS

excusable neglect.  To the contrary, as noted in the declaration of Culp's counsel submitted in support of this motion, Sposito's representative (who is not an attorney) contacted Culp's counsel by telephone on May 8, 2019 after Sposito was served with the summons and complaint to discuss a possible settlement of this matter.[6]  (Declaration of Edwin R. Cottone, Esq. ("Cottone Decl.") ¶ 6.)  As such, Sposito was clearly aware of this lawsuit.  Yet, despite that fact, he failed to file an answer or otherwise respond to the complaint.  (*See PepsiCo*, 238 F. Supp.2d at 1177 (finding "the possibility of excusable neglect is remote" where the defendant contacted plaintiffs' counsel to discuss settlement, but nevertheless failed to respond to the complaint).)  Because there is no excusable neglect here, this factor weighs in favor of entering default judgment.

### F.  Policy Favoring Decisions on the Merits Does Not Preclude Entering Default Judgment in this Case

Under this *Eitel* factor, the Court takes into account the public policy in favor of resolving cases on their merits when reasonably possible.  However, "this preference, standing alone, is not dispositive."  (*PepsiCo*, 238 F. Supp.2d at 1177; *see also Kloepping v. Fireman's Fund*, No. C 94-2684 TEH, 1996 WL 75314, at *3 (N.D. Cal. Feb. 14, 1996) ("[T]he preference to decide cases on the merits does not preclude a court from granting default judgment").)  Indeed, courts have emphasized that a defendant's "failure to answer [the] Complaint makes a decision on the merits impractical, if not impossible."  (*PepsiCo*, 238 F. Supp.2d at 1177 (further emphasizing that "[u]nder Fed. R. Civ. P. 55(a), termination of a case before hearing the merits is allowed where a defendant fails to defend an action").)

---

[6] The representative's name is Mark Mullins.  Mr. Mullins and his firm (Mullins & Associates, Inc.) are located in Arizona and apparently provide debt settlement services.  However, the Arizona Corporation Commission's website lists Mr. Mullins' firm as "Inactive."  (Cottone Decl. ¶ 6, Ex. B.)

18

COTTONE & MOON
LITIGATION ATTORNEYS

### G. The Requirements of L.R. 55-1 are Satisfied

Finally, Culp has satisfied all requirements of L.R. 55-1 for this motion for default judgment. Specifically, Culp's motion is supported by declarations confirming that:

(a)    Default was entered by the Clerk of the Court against Sposito on June 20, 2019;

(b)    Default was entered against Sposito with respect to the complaint filed against him by Culp;

(c)    Sposito is not an infant or incompetent person (Cottone Decl. ¶ 9);

(d)    Sposito is not in the military, and therefore the Servicemembers Civil Relief Act (50 U.S.C. App. § 521) does not apply (Cottone Decl. ¶ 10); and

(e)    Because Sposito has not appeared in this case, the notice requirements of Fed. R. Civ. P. 55(b)(2) are thus inapplicable (*see* Fed. R. Civ. P. 55(b)(2) ("*If the party against whom a default judgment is sought has appeared personally or by a representative*, that party or its representative must be served with written notice of the application at least 7 days before the hearing") (emphasis added).

## IV.    CONCLUSION

For the foregoing reasons, the *Eitel* factors collectively weigh in favor of entering default judgment in this case. Accordingly, Culp's motion should be granted, and default judgment should be entered in its favor against Sposito in the sum of **$127,121.80**. Culp also requests that the Court set a future hearing to accept evidence sufficient to support an award of punitive damages in the amount of **$185,167.62**.

Culp further requests that the Court allow its reasonable attorneys' fees to be subsequently added to the judgment pursuant to a noticed motion under Fed. R. Civ. P. 54(d)(2) and L.R. 55-3. In addition, Culp requests that the Court allow its

19

COTTONE & MOON
LITIGATION ATTORNEYS

1 costs to also be subsequently added to the judgment pursuant to an application to

2 the Clerk of the Court to tax costs Clerk of the Court to tax costs pursuant to Fed.

3 R. Civ. P. 54(d) and L.R. 54-2.

4

5 Dated: June 19, 2019                          Respectfully submitted,

6

7                                               /s Edwin R. Cottone
                                                Edwin R. Cottone, Esq. (SBN 222689)
8                                               COTTONE & MOON
                                                5000 Birch Street, Suite 3000
9                                               Newport Beach, CA 92660
                                                Telephone: (949) 260-2004
10                                              Facsimile: (949) 861-9922
11                                              Email: ed@cottonemoon.com
                                                *Attorneys for Plaintiff*
12                                              *Culp Construction Company*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

20